

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | | |
|---|---|---|---|
| *Matthew J. Maddox*<br>*Assistant United States Attorney*<br>*Matthew.Maddox2@usdoj.gov* | *Mailing Address*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT 410-209-4940*<br>*MAIN 410-209-4800*<br>*FAX 410-962-0716* |

September 3, 2020

Devin Prater
Assistant Federal Public Defender
Office of the Federal Public Defender
100 S. Charles Street, Tower II, 9th Floor
Baltimore, Maryland 21201

      Re:    <u>United States v. Juliet Cervellon-Iqbal</u>, Crim. No. _____
            (Criminal Complaint Case No. 20-0290-TMD)

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Juliet Cervellon-Iqbal (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **September 10, 2020**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense(s) of Conviction</u>

      1.    The Defendant agrees to plead guilty to Counts One and Two of the Criminal Information, which charge the Defendant with Bank Fraud in violation of 18 U.S.C. § 1344, and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A, respectively. The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

<u>Elements of the Offense(s)</u>

      2.    The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Criminal Information, in the District of Maryland,

      *Count One (Bank Fraud)*

           a.    The Defendant knowingly executed a scheme or artifice to defraud a financial institution, or knowingly executed a scheme to obtain the money, funds, or other property owned by or under the control of a financial institution by means of material false or fraudulent pretenses, representations or promises;

Rev. August 2018

b.      the Defendant did so with the intent to defraud; and

c.      the financial institution was federally insured.

*Count Two (Aggravated Identity Theft)*

d.      the Defendant knowingly transferred, possessed, or used the means of identification of another person,

e.      without lawful authority,

f.      during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), to include the violation of 18 U.S.C. § 1344.

<u>Penalties</u>

3.      The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| One | 18 U.S.C. § 1344 | N/A | 30 years | 5 years | $1,000,000 | $100 |
| Fourteen | 18 U.S.C. § 1028A | 2 years (consecutive) | 2 years (consecutive) | 1 year | $250,000 | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

Rev. August 2018

    f.  Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

    4.  The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a.  If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  The Defendant has the right to have her case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against her. By agreeing to proceed by way of Criminal Information, the Defendant is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury. The Defendant further waives the right to filing of the Criminal Information with the time limit prescribed by 18 U.S.C. § 3161.

    c.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    d.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

3

e.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

f.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

h.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

i.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Rev. August 2018

4

<u>Factual and Advisory Guidelines Stipulation</u>

6.      This Office and the Defendant stipulate and agree to the Stipulation of Facts set forth in Attachment A, which is incorporated by reference herein.

*Count One (Bank Fraud)*

a.      This Office and the Defendant further agree that the applicable base offense level for Count One is 7 pursuant to United States Sentencing Guidelines ("USSG") §2B1.1(a)(1).

b.      The parties further agree that there is an increase of **12 levels**, pursuant to USSG §2B1.1(b)(1)(G), because the loss exceeded $250,000 but did not exceed $550,000. (Subtotal: 19)

c.      The Court will determine at the time of sentencing whether there is a further increase of **2 levels**, pursuant to USSG §2B1.1(b)(10)(C). The Defendant reserves the right to argue that the two-level increase does not apply, and this Office reserves the right to argue that the two-level increase does apply. (Subtotal: 19 or 21)

d.      The parties agree that there is a further increase of **2 levels**, pursuant to USSG §2B1.1(b)(11)(B), because the offense involved the production or trafficking of unauthorized or counterfeit access devices or authentication features.  (Subtotal: 21 or 23)

e.      The parties agree that there is a further increase of **2 levels**, pursuant to USSG §3B1.3, because the Defendant abused a position of private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.  (Subtotal: 23 or 25)

f.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to USSG §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  This Office agrees to make a motion pursuant to USSG §3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty.  This Office may oppose any adjustment for acceptance of responsibility under USSG §3E1.1(a) and may decline to make a motion pursuant to USSG §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

g.      Thus, the parties anticipate a final offense level of either **20 or 22** for Count One, depending on the Court's ruling with respect to a potential two-level increase pursuant to USSG §2B1.1(b)(10)(C).

**Rev. August 2018**

*Count Two (Aggravated Identity Theft)*

h.      Pursuant to USSG §2B1.6, the guideline sentence for Count Two is two years, to be imposed to run consecutively to any term of imprisonment imposed for Count One (Bank Fraud).

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Obligations of the Parties</u>

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).  This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment.  At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10.     The Defendant agrees that she will not at any point seek employment with any bank or financial institution.

<u>Defendant's Consent to Proceed by Telephone</u>

11.     This Office and the Defendant agree, pursuant to the Coronavirus Aid, Relief, and Economic Recovery Act, H.R. 748 (the CARES Act), enacted on March 27, 2020, that certain federal court proceedings are permitted to proceed telephonically.  The parties further agree that Section 15002(b) of the CARES Act permits the District Court to conduct certain hearings in felony matters telephonically.  Further, pursuant the District of Maryland's Standing Order 2020-06, dated March 29, 2020, District Court Judges are permitted to conduct Rule 11 plea hearings and sentencing hearings in felony cases telephonically.

12.     The defendant consents, after fully consulting with undersigned defense counsel, to proceed with the Rule 11 plea hearing and the sentencing hearing telephonically in this

Rev. August 2018

matter. Because an in-person or in-court proceeding in this matter cannot occur without serious jeopardy to public health and safety, and because delay in this case will result in serious harm to the interests of justice, the Defendant specifically requests to proceed telephonically. The Defendant agrees to proceed telephonically, and knowingly and expressly waives any and all rights to a personal appearance in court in this matter.

## Waiver of Appeal

13.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.     The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

ii.     This Office reserves the right to appeal any sentence below a statutory minimum.

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

14.     The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which does not exceed $357,243. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663, 3663A, 3563(b)(2), and/or 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection

Rev. August 2018

7

remedies at any time.  The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation.  The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Forfeiture

15.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

16.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

17.     In lieu of forfeiture of the residential property located at 72 Spa Road, Annapolis, Maryland, the United States agrees to accept payment in an amount equal to any portion of the Defendant's equity in the residential property that is derived from or obtained by the Defendant as a result of the Defendant's illegal activities.  The United States agrees to release any lien or lis pendens filed against the residential property located at 72 Spa Road, Annapolis, Maryland, once this payment is made.

18.     The Defendant agrees to assist fully in the forfeiture of the above property.  The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

19.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint.  The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

20.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

21.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

22.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

23.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

Rev. August 2018

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Matthew J. Maddox
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9-17-2020
Date

Juliet Cervellon-Iqbal

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/23/2020
Date

Devin Prater, Esq.

Rev. August 2018

10

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Juliet Cervellon-Iqbal (the "Defendant"), age 38, was a resident of Annapolis, Maryland. Between 2010 and 2017, the Defendant was an employee of Wells Fargo Bank ("WFB") and eventually became a manager of a branch located in Annapolis, Maryland. In October 2010, the Defendant signed an acknowledgment stating that she understood the policy and standards of WFB concerning ethical conduct of bank employees and that she agreed to conduct herself accordingly. After her employment with WFB was terminated, the Defendant obtained employment with BB&T Bank.

Between approximately June 2011 and November 2018, the Defendant knowingly and intentionally executed schemes to defraud banks and several individuals and to embezzle, misapply, and obtain money under the control of said banks. The Defendant executed these schemes by means of false and fraudulent pretenses, representations, and promises, and by means available to her in her capacity as a bank employee and branch manager.

During the time frame of her fraud schemes, the Defendant developed a banking relationship with WFB customer A.M.O. The Defendant then used her position at WFB and A.M.O.'s personal identifying information to open accounts in A.M.O.'s name, to deposit and transfer A.M.O.'s money into these accounts, and to request and cause issuance of at least approximately 18 debit cards in A.M.O.'s name associated with the accounts without A.M.O.'s authorization. The Defendant arranged to have at least some of the A.M.O. debit cards sent directly to her at the WFB branch where she worked, activated these debit cards, and created personal identification numbers for them.

Without A.M.O.'s knowledge or consent, the Defendant withdrew cash from the A.M.O. accounts, and made payments drawn on the accounts and used debit cards associated with the accounts for various retail purchases of clothing, personal electronics, and other merchandise; service for her Cadillac Escalade vehicle; hair and nail salon and spa visits; visits to restaurants and nightclubs; credit card bills; auto rentals; groceries; phone and utility bills; medical and dental services; hotel stays; and trips and visits to tourist attractions in locations such as New York City and Virginia Beach. The Defendant was observed in surveillance images captured at ATMs making withdrawals from an A.M.O. account. Records of payments for phone, utility, medical, dental, and auto repair and maintenance services revealed that these payments were made for the Defendant's benefit and/or associated with her home address. The unauthorized and fraudulent withdrawals, payments, and purchases made by the Defendant in A.M.O.'s name between June 2011 and sometime in 2017 totaled at least approximately $334,065. A.M.O. did not discover the fraud until in or about 2017.

Rev. August 2018

1

While a WFB employee, the Defendant obtained blank checks for a WFB account held by two other WFB customers. The checks bore the names and address of the account holders, whom the Defendant knew and understood to be real persons. In October and November 2018, the Defendant conspired with another person to have checks written and drawn on this account with the intent to defraud. Embezzled and forged checks in the total amount of $19,000 were subsequently negotiated at a branch of Bank of America located in Annapolis, Maryland without the account holders' knowledge or authorization.

While working at BB&T Bank in 2018, the Defendant received a report that a credit card belonging to BB&T customer L.A. was compromised and being used for fraudulent transactions. The Defendant then used the customer's credit card information to engage in multiple fraudulent transactions totaling at least approximately $4,178 without the customer's knowledge or authorization.

The Defendant was arrested on February 6, 2020. During a post-arrest interview, the Defendant admitted that she stole money from A.M.O. by ordering debit cards linked to A.M.O.'s accounts and using the debit cards at ATMs, to buy merchandise, and to pay bills. The Defendant also admitted that she used L.A.'s credit card without authorization and that she conspired with another person pass checks belonging to a customer of WFB.

The deposits of WFB, Bank of America, and BB&T Bank are insured by the Federal Deposit Insurance Corporation.

SO STIPULATED:

_____
Matthew J. Maddox
Assistant United States Attorney

_____
Juliet Cervellon-Iqbal
Defendant

_____
Devin Prater, Esq.
Counsel for Defendant

Rev. August 2018

2