

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Matthew J. Maddox*
*Assistant United States Attorney*
*Matthew.maddox2@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4940*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

May 13, 2021

Via CM/ECF

The Honorable Catherine C. Blake
United States District Court of the District of Maryland
101 West Lombard Street
Chambers 7D
Baltimore, MD 21201

   Re: United States v. Juliet Cervellon-Iqbal
     Criminal No. CCB-20-0313

Dear Judge Blake,

  I am writing to provide the government's sentencing recommendation in advance of the sentencing hearing in the above-referenced matter, scheduled for Wednesday, May 19, 2021, at 10:00 a.m. Pursuant to a plea agreement, the defendant has entered a plea of guilty to the Criminal Information, which charges Bank Fraud in violation of 18 U.S.C. § 1344, and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A.

  Considering the factors set forth in 18 U.S.C. § 3553(a), the government requests that the Court impose a total sentence of 65 months of imprisonment, including 41 months on Count One (Bank Fraud) and the mandatory consecutive sentence of 24 months on Count Two (Aggravated Identity Theft). The government recommends a three-year period of supervised release to following the term of incarceration, to include the conditions recommended by the U.S. Probation Office in the Presentence Investigation Report. The government further requests an order of restitution in the total amount of $357,243, including $353,065 owed to Wells Fargo and $4,178 owed to BB&T.[1]

  **I. Advisory Guidelines Range**

  The government agrees with the statement of offense conduct outlined in Paragraphs 7 through 15 of the Presentence Investigation Report and in Attachment A to the plea agreement.

  In addition to the base offense level for Bank Fraud and enhancements for the loss amount and the defendant's abuse of trust and production of unauthorized access devices, the stipulated

---

[1] With the defendant's consent, the government has separately filed a motion for a preliminary order of forfeiture requesting a money judgment in the amount of $334,065.

facts support an additional enhancement for the defendant's use of sophisticated means in conducting the fraud pursuant to U.S.S.G. § 2B1.1(b)(10)(C).[2] This provision provides a two-level increase if the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means[.]" Application Note 9(B) to U.S.S.G. § 2B1.1 provides that "sophisticated means" involves "especially complex or especially intricate conduct pertaining to the execution or concealment of an offense."

There can be no doubt that the defendant's conduct in this case was intricate. Without victim A.M.O.'s permission, the defendant obtained no less than 18 different debit cards in A.M.O.'s name and associated with multiple accounts she opened in A.M.O.'s name, and used those cards in hundreds of fraudulent transactions—and she did so over the course of more than five years. It is clear that the defendant procured so many debit cards in order to continue stealing A.M.O.'s money without hindrance or detection.

A two-level increase pursuant to U.S.S.G. § 2B1.1(b)(10)(C) results in a final offense level of 22 and an advisory guidelines range of 41 to 51 months for Bank Fraud. Pursuant to U.S.S.G. § 2B1.6, 24 months are added to the guidelines range for Aggravated Identity Theft, resulting in a total guidelines range of 65 to 51 months. For the reasons explained below, the government recommends a sentence at the low end of this range.

## II.     Sentencing Recommendation

Over the course of more than seven years, the defendant abused her positions of employment at two different banks to steal more than $350,000 from bank customers. The defendant was rapacious in her thefts and spending of the funds stolen from victim A.M.O. After a slow start in the second half of 2011, not a single month went by between July 2012 and May 2017 in which the defendant relented from withdrawing or spending money that A.M.O. entrusted to Wells Fargo. During that time frame, on average, the defendant engaged in approximately 32 fraudulent transactions per month. Theft, fraud, and deceit were practically daily habits for the defendant—all while misappropriating the identity of A.M.O., all for the defendant's own personal gain, and all while she was gainfully employed as a manager at Wells Fargo.

The defendant continued to engage in fraud even after separating from Wells Fargo, forging checks she stole during her employment with Wells Fargo and using credit card information stolen from a customer of BB&T while employed at that bank.

Even in the face of a federal prosecution for fraud, the defendant persisted in her pattern of dishonesty while under pretrial supervision in this case. After her arrest in February 2020, the defendant was released under conditions of supervision. She was informed by her pretrial officer that she was required to notify any potential employers of her charges and, if she was self-employed, she was required to notify her clients of the charges. Throughout her period of supervision, the defendant denied having any employment or income. In December 2020, the pretrial officer learned that the defendant continued to operate and receive income from a welding and remodeling business. When confronted, the defendant initially denied any involvement with

---

[2] In Paragraph 6.c of the plea agreement, the government reserved the right to argue that the offense level should be increased two levels pursuant to U.S.S.G. § 2B.1.1(b)(10)(C).

the company but eventually admitted that she owned the company and received income from it. The defendant was ordered detained as a result of the violation.

As part of its financial investigation, the government obtained bank statements from the defendant from the past year. The statements reflect various check and cash deposits and business-related transfers of funds totaling approximately $66,000 between July and December 2020. During the same time period, much of the money that entered the defendant's accounts was spent through retail transactions and nearly daily deliveries of meals from various restaurants. This spending ultimately left a negligible balance in December 2020—and practically nothing to be paid toward restitution in this case.

A lengthy sentence of incarceration is necessary to account for the defendant's brazen violations of a position of trust as a bank manager, repeated theft of the identity of a customer who trusted her, and serial fraudulent transactions over the course of several years, as well as her apparent resistance to deterrence from financial dishonesty. The way in which the defendant squandered the stolen money on personal expenditures like clothing, personal electronics, spa and salon visits, restaurants, nightclubs, trips, hotel stays, and personal bills leaves no mitigating circumstance to justify a downward variance. The government recommends a low-end guidelines sentence of 65 months.

### III. Conclusion

For the foregoing reasons, the government recommends that the Court impose a sentence of 65 months of imprisonment to be followed by a three-year period of supervised release, a restitution order in the total amount of $357,243, and a $200 special assessment. The defendant has also consented to a money judgment in the amount of $334,065.

Respectfully,

Jonathan F. Lenzner
Acting United States Attorney

_/s/_
Matthew J. Maddox
Assistant United States Attorney